**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ABDUL AMIN,

Petitioner,

v. 9:26-cv-01520 (AMN)

DAVID VENTURELLA, *in his official capacity as Acting Director of the Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*; TODD BLANCHE, *in his official capacity as Attorney General of the United States*; PHILIP RHONEY, *in his capacity as Acting Field Office Director, Buffalo Field Office, Immigration and Customs Enforcement*,

Respondents.

---

**APPEARANCES:** **OF COUNSEL:**

**LAW OFFICE OF KATHY MANLEY** **KATHY E. MANLEY**
26 Dinmore Road
Selkirk, NY 12158
*Counsel for Petitioner*

**UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF NEW YORK** **ALEXIS M. OSBORNE**
Assistant United States Attorney
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207-2924
*Counsel for Respondents*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On August 7, 2026, petitioner Abdul Amin ("Petitioner") was arrested in Schenectady

County, New York by officers from the Glenville Police Department and charged with felony Criminal Possession of Stolen Property. Dkt. Nos. 8-3, 8-4. Petitioner was released from custody that same day and, shortly thereafter, officers from U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner and detained him in the Montgomery County Jail. Dkt. No. 1 ("Petition") at ¶ 1; Dkt. No. 8-2.[1]

On August 10, 2026, Petitioner filed an emergency petition for a writ of habeas corpus in the Northern District of New York pursuant to 28 U.S.C. § 2241, seeking, *inter alia*, Petitioner's immediate release or an individualized bond hearing. Dkt. No. 1. The Court subsequently issued an order directing Respondents to show cause as to why the Petition should not be granted. Dkt. Nos. 2, 7. Respondents opposed the Petition, Dkt. No. 8, and Petitioner filed a Reply, Dkt. No. 9. On August 19, 2026, the Court held a hearing on the Petition (the "Show Cause Hearing"), after which the Court took the matter under advisement.

For the reasons set forth below, the Court grants the Petition and orders a bond hearing.

## II. BACKGROUND

Petitioner is a citizen of Pakistan. Dkt. No. 1 at ¶ 1; *see also* Dkt. No. 8-1. On September 19, 2019, Petitioner entered the United States on a B-2 Visitor visa, which he overstayed. Dkt. No. 8-2 at 2-3; *see also* Dkt. No. 1 at ¶ 1. Petitioner has interacted with immigration authorities in the past, including in an unsuccessful effort to obtain lawful status in the United States (via Forms I-130 and I-485) and in a subsequent successful application for employment authorization (via Form 1-765). Dkt. No. 8-2 at 3. Petitioner asserts that he is married to a United States citizen. Dkt. No. 1 at ¶ 1.

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.

On August 7, 2026, Petitioner was arrested in the town of Glenville, New York by local police after he was allegedly found driving a vehicle that had been reported stolen from New York City.[2] Dkt. Nos. 8-3, 8-4. Local police detained Petitioner at the Schenectady County Jail on charges of felony Criminal Possession of Stolen Property valued at more than $3,000. Dkt. Nos. 8-3, 8-4. While in custody, officers from ICE Enforcement and Removal Operations ("ERO") Albany encountered Petitioner,[3] and he identified himself as a citizen of Pakistan and informed them that he had entered the United States on a B-2 visa in September 2019. Dkt. No. 8 at 2; Dkt. No. 8-2 at 2. At the Show Cause Hearing, Petitioner's counsel asserted that Petitioner was subsequently arraigned on his criminal charge and released under the supervision of the Schenectady County Probation Department. Upon his release, however, ICE ERO officers arrested Petitioner for immigration violations and transported him to Montgomery County Jail. Dkt. No. 8 at 2. The next day, ICE served Petitioner with an I-200 Warrant for Arrest of Alien and a Notice to Appear ("NTA"). Dkt. No. 8 at 2. Petitioner then petitioned this Court for a writ of habeas corpus, challenging his detention as violative of the Fifth Amendment's guarantee of due process and the Fourth Amendment's protection against arrest without probable cause or proper warrant.

Petitioner was subsequently transported to the Buffalo Federal Detention Facility. *See* Dkt. Nos. 4; 5; 7. To date, Petitioner has neither requested nor received an individualized bond hearing. Dkt. No. 8-7.

---

[2] At the Show Cause Hearing, neither party was able to provide the Court with additional details regarding the circumstances of Petitioner's arrest by local police, including how it was that Glenville police initially came to stop him.

[3] Counsel for Respondents was similarly unable to inform the Court how it was that the ICE ERO officers came to "encounter" Petitioner, other than that ICE ERO had been alerted to his presence at the jail.

## III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241, a district court is authorized to "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). It is well-settled that "[n]oncitizens are also entitled to challenge through habeas corpus the legality of their ongoing detention." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 771 (2008)). "The 'necessary scope' of this review and resulting relief 'in part depends upon the [procedural] rigor of any earlier proceedings.'" *Id.* (alteration in original) (quoting *Boumediene*, 553 U.S. at 781). And "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* (first quoting *Boumediene*, 553 U.S. at 781-83, 786; and then citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301-02 (2001)).

## IV. DISCUSSION

### A. Habeas Requirements

The Petition is properly before the Court. "Generally, '[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States,' he must file the petition in the district of confinement and name his immediate custodian as the respondent." *Öztürk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025) (alteration in original) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004)). The Petition was filed in the district where Petitioner was confined and names Respondents as Petitioners immediate custodians. Dkt. No. 1. The Federal Respondents have appeared through counsel. *See generally* Docket Sheet.[4]

[4] To the extent that Respondents urge the Court to decline to hear the Petition as a matter of prudence because Petitioner has not yet exhausted the administrative remedies available to him, Dkt. No. 8 at 3, the Court finds that the Petition raises a substantial constitutional question about

### B. The Merits of Petitioner's Claim

Petitioner contends that his continued detention is illegal because ICE did not make an individualized determination that his detention was necessary and because he was arrested without a warrant or NTA in violation of the procedures mandated by 8 U.S.C. § 1226(a). Dkt. No. 1 at ¶¶ 38, 42. Respondents concede that Petitioner was detained pursuant to Section 1226(a) but argue that Petitioner has received all process due under the statute. Dkt. No. 8 at 2.

The Court agrees that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). *See Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (holding that "Section 1226(a) plainly applies to noncitizens," like Petitioner, "who are present in the United States"). Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending such decision, the Attorney General "(1) may continue to detain the arrested alien; [or] (2) may release the alien." *Id.* § 1226(a)(1)-(2). Courts in this Circuit have found that Section 1226 and its implementing regulations "require an individualized determination as to whether the detention of a noncitizen is appropriate after considering whether the noncitizen (1) is a 'danger to property or persons' and (2) is 'likely to appear for any future proceeding.'" *Farfan Parra v. Ball*, No. 9:26-CV-1162 (MAD), 2026 WL 1960934, at *4 (N.D.N.Y. June 30, 2026) (quoting *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025)); *see also Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020) ("[Section] 1226(a) and its implementing regulations require ICE

---

the propriety of Petitioner's detention and excuses further administrative exhaustion, *see* Dkt. No. 9 at 2; *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("whether an exercise of discretion to detain a noncitizen under [Section] 1226(a) requires a pre-deprivation individualized assessment, and if so, whether the failure to provide such an assessment violates due process" raises a "substantial constitutional question that cannot properly be adjudicated administratively.").

officials to make an individualized custody determination.") (alteration in original). Respondents have made no showing that ICE officers made an individualized determination as to Petitioner prior to his arrest. *See* Dkt. No. 8 at 3; Dkt. No. 9 at 2. In addition, Respondents concede that at the time ICE arrested Petitioner, they had no warrant and an NTA had not yet been issued. *See* Dkt. No. 8 at 2 (noting that ICE served Petitioner with a warrant and NTA the day *after* he was taken into custody).[5]

Respondents nevertheless argue that (1) the arrest warrant and NTA that issued shortly after Petitioner's arrest cured any defect, or alternatively (2) any defect in the process Petitioner has received nevertheless does not rise to the level of constitutional deprivation.

Respondents' first argument is unconvincing. The exigency exception under 8 U.S.C. § 1357(a)(2) would be rendered superfluous if a post-arrest warrant could satisfy the requirements of Section 1226(a), in contravention of the canon against surplusage. *See Barbosa da Cunha*, 175 F.4th at 88; *see also Vergel Gonzalez v. Rhoney*, No. 9:26-cv-1435 (MAD), 2026 WL 2327690, at *9 (N.D.N.Y. Aug. 12, 2026) ("[A]fter-the-fact arrest warrants can be called many things—illegal, improper, and unconstitutional, among them. But whatever label one wishes to apply, the practice is fundamentally at odds with . . . constitutional behavior in this country.") (quotation marks and citation omitted, alteration in original); *see Parada Cruz v. Mullin*, No. 26-CV-1110, 2026 WL 1027441, *2 (E.D.N.Y. Apr. 16, 2026) (Removal proceedings are "begun through the issuance of

[5] With respect to the lack of an arrest warrant, the Court notes that the INA provides that an officer acting without a warrant may nevertheless "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any [law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens] *and is likely to escape before a warrant can be obtained for his arrest*." 8 U.S.C. § 1357(a)(2) (emphasis added); *see also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). Respondents have made no showing that Petitioner was likely to escape before ICE officers could obtain a warrant.

a[n NTA]. There is no 'leeway.' If ICE wants to use a warrant, it must have a valid NTA in place."); *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130 at *1, n.3 (E.D.N.Y. Nov. 13, 2025) ("[T]here is no leeway to avoid issuance of an NTA prior to arrest for a discretionary § 1226(a) removal.").

Respondents' second argument presents a closer call and goes to the core of the Petition. Courts apply the three-factor balancing test enunciated in *Mathews v. Eldridge* to determine whether a procedural defect violates the Constitution. 424 U.S. 319, 335 (1976). These factors include (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Mathews*, 424 U.S. at 335) (quotation marks omitted).

The first factor weighs strongly in favor of granting the Petition. Petitioner seeks to vindicate the "most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

The second factor also cuts in Petitioner's favor. While ICE possesses substantial discretion to detain noncitizens, the INA's pre-arrest warrant and individualized determination requirements serve to ensure that "'such discretion actually [is] exercised—*i.e.*, that some determination actually [is] made,'" to prevent erroneous deprivation of that liberty interest. *Yao v. Almodovar*, 813 F. Supp. 3d 461, 475 (S.D.N.Y. 2025) (analyzing warrant served upon noncitizen at time of arrest to determine if it reflected a discretionary determination as to the propriety of

detention) (quoting *Tumba v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025)); *see Hassan v. Bondi*, No. 9:26-CV-00319 (BKS), 2026 WL 891602 at *5 (N.D.N.Y. Apr. 1, 2026) (Sannes, C.J.) (arrest of petitioner properly detained under Section 1226(a) pursuant to a warrant that "involved no exercise of discretion" contributed to "high" risk of erroneous deprivation); *Gopie*, 2025 WL 3167130 at *3 ("the due process clause . . . in this context requires *pre*-deprivation process before someone is deprived of their liberty," in the form of a "custody determination prior to or contemporaneous with detention by an ICE officer.") (citations omitted); *Parada Cruz*, 2026 WL 1027441 at *5, n.32 ("The point is that regardless of what statutory authority is used to arrest someone, issuance of NTAs and warrants post-arrest to create post hoc justifications violates due process.").

The third factor counsels against granting the Petition. "'The Government has interests in ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community.'" *Hassan*, 2026 WL 891602 at *5 (quoting *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025)) (additional internal quotation marks omitted). Respondents have made no record that they have considered whether Petitioner is a danger to the community or is likely to abscond prior to future immigration proceedings. The record before the Court nevertheless contains limited and controverted evidence of Petitioner's ties to the community. *Compare* Dkt. No. 1 (Petitioner is "married to a U.S. citizen") *with* Dkt. No. 8-2 at 3 (Petitioner's "wife is currently in Antigua"). Petitioner's counsel offered no other information to the Court that Petitioner holds ties to the community. Moreover, Petitioner has a pending felony criminal charge, and the facts elicited at the Show Cause Hearing regarding his release from state custody suggest that he may pose a flight risk or a danger to the community sufficient to warrant supervision. Dkt. No. 8 at 1-2 (describing

Petitioner's charges). On these unique facts, the Court finds that Respondents have a substantial interest in Petitioner's detention.

Balancing these factors, the Court finds that Petitioner's rights were violated when he was arrested without a warrant, an NTA, or an individualized determination that his detention was appropriate. The Petition is therefore granted.

### C. Remedy

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citations omitted). However, "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene*, 553 U.S. at 779 (citations omitted). Indeed, "the proper remedy for a deprivation of due process is the process itself." *Tompkins v. Pullen*, No. 22-CV-339, 2022 WL 3212368, at *14 (D. Conn. Aug. 9, 2022); *see also Muhmmaud v. Murphy*, No. 3:08-CV-1199 (VLB), 2009 WL 4041404, *7 (D. Conn. Nov. 19, 2009) (citing *U.S. ex rel. Bey v. Conn. State Bd. of Parole*, 443 F.2d 1079, 1089–90 (2d Cir. 1971), *vacated on other grounds by Conn. State Bd. of Pardons v. Bey*, 404 U.S. 879 (1971)); *Hassan*, 2026 WL 891602 at *6 (ordering bond hearing to rectify arrest pursuant to defective warrant); *A.P.C. v. Genalo*, No. 26 CIV. 5827 (KPF), 2026 WL 2323423 at *2 (S.D.N.Y. Aug. 11, 2026) (exercising "discretion to order a burden-shifted bond hearing rather than immediate release" to rectify failure to make an initial detention determination where pending criminal charges indicated petitioner posed a "danger to the community") (collecting cases); Dkt. No. 1 at ¶ 41 ("In the alternative, Petitioner seeks at a minimum a bond hearing . . . ."); Dkt. No. 8 at 4 ("If, however, the Court concludes that Petitioner is entitled to additional process than that which has already been afforded, Respondents request that the Court order a prompt, individualized bond hearing . . . .").

The Court further finds that in the absence of any individualized assessment regarding Petitioner's initial detention, due process requires that Respondents bear the burden of demonstrating dangerousness or flight risk by clear and convincing evidence at any bond hearing. *Lieogo v. Freden*, No. 25-cv-06615, 2025 WL 3290694, at *5–6, (W.D.N.Y. Nov. 26, 2025) (reviewing *Mathews* factors and finding, inter alia, no evidence of individualized assessment supporting the petitioner's detention, and noting that detention was due solely to "policy change reversing decades of past practice," and ordering bond hearing and assigning burden of proving "dangerousness or flight risk by clear and convincing evidence" to the respondents); *see also Quintanilla v. Decker*, No. 21-cv-417, 2021 WL 707062, at *3, 2021 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention") (emphasis added).

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and the Court further

**ORDERS** that within ten days of this Order, Respondents shall afford Petitioner an individualized bond hearing before an immigration judge, where the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is either a flight risk or a danger to the community, justifying his continued detention without bond; and the Court further

**ORDERS** that Respondents shall certify compliance with this Order by filing a status report by September 8, 2026.

**IT IS SO ORDERED.**

Dated: August 28, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge